HILDA M. JONES et al., Appellees, v. WALTER ANDERSON et al., Appellants.

No. 41262.

DECEMBER 17, 1931.

Thomas & Loth, for appellants.

Burnstedt & Hemingway, for appellees.

MORLING, J.—Plaintiff Hilda claims ownership under her father's will, which gave the land in question "to my only daughter and heir Hilda M. Lundberg (plaintiff) * * * to hold the premises above described to the said Hilda M. Lundberg and the heirs of her issue forever." A gift of the chattels was likewise "to my said daughter Hilda M. Lundberg and to the heirs of her issue forever." The fourth clause of the will declared:

"Should my said daughter die without children then in that case all the above described property, both real and personal, * * * shall be given in fee simple in equal shares to my six brothers and two sisters as follows: (naming them) * * * to them and their heirs and assigns forever."

The will was made and testator died in 1894, when Hilda was evidently quite young. Plaintiffs have four children, the first born September 19, 1910, and the last March 8, 1920. Under date of April 15, 1930, the writing sued upon was drawn in duplicate and signed by plaintiff J. W. Jones, the husband, and by defendant vendees. The duplicates were sent by J. W. Jones to plaintiff Hilda for her to sign. Defendants had the title examined by their attorneys, who reported that the title was doubtful and advised that if plaintiff wife had children defendants require a court proceeding to be brought to quiet title. After defendants received this report J. W. Jones, with the duplicate contracts in his possession, not signed by his wife, interviewed defendants, told them that his wife refused to sign, that she wanted more money, was told of the opinion of defendants' attorneys, and that the defendants "didn't want the farm with such a title." J. W. Jones said he thought his wife had misunderstood, and "said he would fix that title up." From that time on there were numerous interviews and letters between the parties and their attorneys in which plaintiffs and their attorneys promised to make the title satisfactory to defendants' attorneys. Hilda did (apparently on May 2, 1930), sign the contract. Defendants had no knowledge of this fact, however, until they received from plaintiffs' attorneys a letter dated June 21, 1930, enclosing one of the duplicates signed by the wife, and stating: "We are proceeding with the action to have the title satisfactory and it will be approved by your attorney and all of the court costs will be paid by Dr. Jones." Defendants evi-

dently turned the contract over to their attorneys. Various conferences took place between the respective attorneys for the purpose of deciding upon a method of procedure. A tentative agreement upon a suit by the present plaintiffs for specific performance was made, pursuant to which original notice was served and petition and answer filed, the answer setting up defective title. This procedure, however, was not followed out, and the suit was dismissed without prejudice. Proposals were made looking toward the deposit by defendants of the amount of the first payment in a bank, and also toward their renting the land. No agreement, however, further than that plaintiffs were to make the title satisfactory to defendants' attorneys was arrived at. By letter from Mrs. Jones to one of the defendants dated September 24, 1930, plaintiff wrote:

"However, we have agreed to furnish you with a clear title, which we feel that we already have, so we have decided to pay what is absolutely necessary to make may (my?) title to the farm clear. I want that point settled whether you get the farm or not. However we are not willing to pay for anything that is not directly necessary to establish a clear title, so any other expense that your lawyer may make it is up to you to pay that. * * * If it should happen that the case should be decided right away and should go so that we can't sell the farm, then we would pay you for the plowing etc. as Dr. Jones wrote you because we would want the place ourselves and you would still have time to rent another place."

Plaintiffs' attorney testifies that he "briefed up the question of the statute against perpetuities," consulted with defendants' attorney, pointed out that he did not think their objection was well founded, "but I also told them we were willing to do anything to help get the deal through, and if they demanded a quieting title suit we would bring it. * * * The first talks were simply discussions as to the title and what could be done about it. There was a discussion as to whether the unborn heirs could be concluded by any quieting title suit, because of the difficulty of finding any defendants to represent them. * * * Mr. Loth (defendants' attorney) claimed all the way through that no suit could be brought which would be satisfactory. He claimed if a suit was taken to the District Court and defendants

were forced to take the title and everybody quit there, that the children or their children, not being parties to that suit, would not be precluded from later attacking the title, and that the case ought to go to the Supreme Court, so they could have a precedence (precedent) that was binding if people later on attacked it. * * * finally I decided we were not getting anywhere, and I would have to start a suit. Mr. Loth and I talked of the fact that the only question raised was the will. Then the question was, if our clients would not pay the amount of fee that was to be agreed upon, then you (defendants' attorney) would raise other questions. And after suit was started they formally raised the question that is now being raised in this case as to whether there was any contract at all. This was also raised in Thomas & Loth's letter of July 21st. Q. I wrote you that they would be safe in taking the title if the Supreme Court rendered an opinion that the title was merchantable, and that 'they were willing to do so if they are at no expense for making a defense.' Now wasn't it at that time that we talked about a friendly lawsuit and raise in that case questions of fact? A. Well, we talked at that time about it, and I think this letter brought up largely the question of defense in the Supreme Court. There was a contention on our part all the time that we expected the contract to be carried out. We were trying to arrive somewhere with your firm as to what we should do and how much we should pay. We were willing to take the expense in the District Court."

Defendants have paid nothing upon the contract. On March 5, 1931, defendants' attorneys notified plaintiffs, or their attorneys, that they would not complete the purchase. On March 6, 1931, petition in this suit was filed.

The petition is founded solely upon the alleged written contract of April 15, 1930. No extraneous or subsequent agreement is relied upon in plaintiffs' pleadings. The parol-evidence rule, of course, was not invoked in the trial court and is not suggested in this Court. Plaintiffs contend that the title is marketable; that they have performed the terms of the written contract; that they were relieved from bringing any suit to satisfy defendants because defendants refused to be satisfied with such proceedings; that they are, therefore, entitled to specific performance of the writing of April 15, 1930.

The writing of April 15, 1930, was no more than a proposal until it was fully executed by all the parties to it. Until it was executed by Hilda M. Jones, defendants were entitled to withdraw it, or to insist upon such changes or additions as they saw fit, whether reasonable or unreasonable. Before the contract as originally proposed was accepted or executed by Hilda M. Jones, defendants refused to accept her title. While a duplicate of the contract after it was signed by Mrs. Jones was mailed by plaintiffs' attorneys to defendants and retained by them, it was retained in reliance upon plaintiffs' agreement to make the title satisfactory to defendants' attorneys. Defendants and their attorneys have steadfastly refused to accept the title as it is, or the terms of the written contract (and likewise have refused to · accept the writing as a consummated contract), unless and until the title should be made satisfactory to defendants' attorneys. Plaintiffs, while promising to make the title satisfactory to defendants' attorneys, have not done so. It is immaterial whether the objections interposed to the title by defendants' attorneys are reasonable or unreasonable. The writing as it is, and on which alone the plaintiffs claim to recover, never became a contract. The conditions prescribed for its consummation have never been performed.

Parties interested in sustaining and in defeating plaintiffs' title are not before the court. It is, therefore, inappropriate, as well as unnecessary, to discuss the question of merchantability.— Reversed.

ALBERT, KINDIG, WAGNER, DE GRAFF, and GRIMM, JJ., concur.